IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CHADAM and JENNIFER CHADAM, individually and on behalf of their minor children A.C. and C.C., <br><br>    Plaintiffs, <br><br>    v. <br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, a governmental entity created and existing under the laws of the State of California, <br><br>    Defendants, <br>_____/ | No. C 13-4129 CW <br><br> ORDER GRANTING MOTION TO DISMISS (Docket No. 18) |

Defendant Palo Alto Unified School District (PAUSD) moves to dismiss Plaintiffs' first amended complaint (1AC). Plaintiffs James Chadam and Jennifer Chadam, individually and on behalf of their minor children A.C. and C.C., oppose the motion. Having considered the papers submitted, the Court GRANTS PAUSD's motion to dismiss, but permits Plaintiffs to amend their complaint.

FACTUAL BACKGROUND

The following facts are alleged in the complaint and taken as true for the purposes of this motion.

James and Jennifer Chadam reside in Palo Alto, California with A.C. and C.C., their minor children. 1AC ¶ 1. On July 22, 2012, Jennifer Chadam enrolled her sons A.C. and C.C. in a middle school owned and operated by PAUSD. Id. ¶ 6. She completed forms for enrollment, including a "Report of Health Examination for School Entry" regarding C.C. Id. ¶ 7. This form included "private, personal and privileged medical information." Id.

1  PAUSD assigned both children to attend the middle school closest
2  to their home.  Id. ¶ 8.  Between August 2, 2012, and August 16,
3  2012, the Chadams provided additional medical information
4  regarding C.C.  Id. ¶ 9.  On August 16, 2012, A.C. and C.C. began
5  attending their assigned middle school.  Id. ¶ 10.

6  On or about September 11, 2012, during a parent-teacher
7  conference, one of C.C.'s teachers disclosed C.C.'s private
8  medical information to parents of another student attending the
9  middle school (Mr. and Mrs. X).  Id. ¶ 11.  The teacher did so
10 with no prior permission or notice from the Chadams.  Id.

11 On September 11, 2012, PAUSD arranged for the Chadams to
12 attend a meeting with Gregory Barnes, the middle school's
13 principal, along with the PAUSD District Nurse and Grant Althouse,
14 the Vice Principal and Administrator of sixth grade.  Id. ¶ 12.
15 At the meeting, the Chadams were told that the children of Mr. and
16 Mrs. X had an active disease and that Mr. and Mrs. X had
17 "discovered C.C.'s 'condition.'"  Id.

18 On September 17, 2012, the Chadams received a call from Mr.
19 Barnes informing them that, based on Mr. and Mrs. X's demands, and
20 based on C.C.'s private medical information, PAUSD intended to
21 prohibit C.C. from attending the middle school he was enrolled at
22 and to transfer him to another PAUSD middle school.  Id. ¶ 13.  On
23 October 1, 2012, the Chadams received a letter from Charles Young,
24 PAUSD Assistant Superintendent, ordering the transfer of C.C. to
25 another middle school.  Id. ¶ 14.

26 On October 12, 2012, the Chadams brought suit in California
27 state court seeking to enjoin PAUSD from transferring C.C. to
28 another middle school.  Id. ¶ 16.  The parties settled the case,

2

with PAUSD agreeing to permit C.C. to stay at the same middle school.  Id.

On September 6, 2013, Plaintiffs brought the present suit in federal court, alleging (1) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the ADA), through 42 U.S.C. § 1983; (2) violation of the Rehabilitation Act of 1972, 29 U.S.C. § 794 et seq., through 42 U.S.C. § 1983; and (3) violation of the federal right to privacy conferred by the First Amendment.

## LEGAL STANDARDS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice.  Id. at 1061.  However, the court need not accept legal conclusions, including "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.  Section 1983

PAUSD argues that it is a state agency and therefore not a "person" within the meaning of 42 U.S.C. § 1983. Plaintiffs bring all three of their claims under § 1983, purportedly to vindicate the rights set forth in Title II of the ADA, § 504 of the Rehabilitation Act, and federal privacy rights as provided by the First Amendment.

As a preliminary matter, Plaintiffs may not bring their Title II and Rehabilitation Act claims under the guise of a § 1983 claim. Section 1983 does not confer any substantive rights, but gives individuals a private cause of action to enforce other rights guaranteed by the United States Constitution and other federal law. <u>Buckley v. City of Redding</u>, 66 F.3d 188, 190 (9th

4

Cir. 1995). But federal law may not be vindicated under § 1983 if, among other things, "Congress has foreclosed citizen enforcement in the enactment [of the law] itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." Id. The Ninth Circuit has ruled that, because Congress provided a comprehensive remedial scheme for individual suits under both Title II and the Rehabilitation Act, it intended to preclude suits seeking to enforce Title II rights through § 1983. Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002). As a result, Plaintiffs cannot bring their first two claims under § 1983 and they must be dismissed. If Plaintiffs wish to vindicate rights provided by Title II and the Rehabilitation Act, they must sue under those statutes directly.

The only claim which Plaintiffs properly brought under § 1983 was their federal right to privacy claim. Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992). Regarding this third claim, the question of whether PAUSD is a "person" within the meaning of § 1983 still remains.

Section 1983 provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any state deprives any person of any federally protected rights, privileges, or immunities shall be civilly liable to the injured person. It is well-established that neither the state, nor a state official acting in his or her official capacity, is a "person" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 65

5

(1989).  Reading the language of the statute and examining Congress' purpose in enacting the statute, the Will Court concluded that Congress had not manifested a clear intention to hold states liable under 42 U.S.C. § 1983.  Id. at 65-66, 68.  The Court also ruled that a suit against a state official in his or her official capacity is essentially against the state itself, and so such suits are also barred for the same reason.  Id. at 71.

Plaintiffs contend that PAUSD is not a state, but a local governmental unit or municipality that can be sued as a "person" under § 1983.  See Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978)).  Plaintiffs are incorrect; PAUSD is instead a state agency warranting the same protections as a state.  To determine whether an entity is an "arm of the state," courts in the Ninth Circuit apply a multi-factor balancing test: (1) whether a money judgment would be satisfied from state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued in its own name, (4) whether the entity has power to take property in its own name or only in the name of the state, and (5) the corporate status of the entity.  Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988).  Of the five factors of the Mitchell test, the first is predominant.  Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 251 (9th Cir. 1992).

6

Applying the Mitchell test to the California school system, the Ninth Circuit held in Belanger that California school districts are state agencies. Id. at 254. As a result of California Supreme Court decisions regarding public school financing and Proposition 13 property tax limitations, California maintains "strict state control of public school funding." Id. at 252. Moreover, California treats public education as a central governmental function by heavily regulating schools. Id. at 253. Following Belanger, courts in this district have repeatedly dismissed suits against California public school districts for this reason. See, e.g., Jianjun Xie v. Oakland Unified Sch. Dist., 2013 WL 812425, at *5 n.5 (N.D. Cal.) (dismissing § 1983 claims against Oakland Unified School District because it is a state agency); O.H. v. Oakland Unified Sch. Dist., 2000 WL 33376299, at *3-4 (N.D. Cal.) (same); Scott v. San Francisco Unified Sch. Dist., 2013 WL 6185598, at *5 (N.D. Cal.) (following the Belanger court's holding that California school districts are "arms of the state" for purposes of the Eleventh Amendment); Doe ex rel. Kristen D. v. Willits Unified Sch. Dist., 2010 WL 890158, at *3 (N.D. Cal.) (same). As a California school district, PAUSD is a state agency equivalent to the state itself. PAUSD therefore is not a "person" within the meaning of § 1983, and so Plaintiffs' third claim is barred.[1]

---

[1] Plaintiffs could avoid this barrier by suing, for damages, the state officials who caused the injury, in their personal

7

II.  Eleventh Amendment Immunity

Having already concluded that Plaintiffs improperly brought their first two claims under § 1983, and that Plaintiffs' third claim fails because PAUSD is not a "person" under § 1983, the Court could dismiss the complaint in its entirety and end its analysis there.  But because Plaintiffs could amend their complaint to sue PAUSD directly under Title II and the Rehabilitation Act, in the interest of providing Plaintiffs with comprehensive guidance, the Court explores the effect of the Eleventh Amendment on Title II and Rehabilitation Act claims.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Courts have interpreted this to prohibit suits against the states and their agencies, whether brought by the state's own citizens or citizens of other states.  Tennessee v. Lane, 541 U.S. 509, 517 (2004).  State immunity is not

---

capacities.  "Personal-capacity suits [] seek to impose individual liability upon a government officer for actions taken under color of state law," where they caused "deprivation of a federal right."  Hafer v. Melo, 502 U.S. 21, 25 (1991).  The Eleventh Amendment also does not act as a barrier to a suit against state officials in their individual capacities.  Id. at 30-31.  Qualified immunity may be raised as a defense.  See id. at 31; see also Pearson v. Callahan, 555 U.S. 223, 227 (2009) (holding that qualified immunity applies when at the time of the purported violation, it was not "clearly established" that the conduct was unconstitutional).

8

absolute, however, with three exceptions to the rule: (1) Congress may abrogate that immunity pursuant to its lawmaking powers conferred by the United States Constitution; (2) the state may waive its Eleventh Amendment immunity; or (3) under the Ex Parte Young doctrine, immunity does not apply when the plaintiff chooses to sue a state official in his or her official capacity for prospective injunctive relief. Douglas v. California Dept. of Youth Authority, 271 F.3d 812, 817-18 (9th Cir. 2001).

The Court first considers whether an exception exists for a potential Title II claim. To determine whether Congress validly abrogated the state's immunity in Title II cases, the Supreme Court set forth a two-part test: "first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." Lane, 541 U.S. at 517. Regarding the first question, it is clear from the text of the ADA that Congress intended to abrogate Eleventh Amendment immunity because Congress explicitly said so. Id. at 518 (the Act provides, "A state shall not be immune under the eleventh amendment . . . for a violation of this chapter."). As to the second question, whether Congress could abrogate state immunity depends on if it did so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment. Id. The Supreme Court found in Lane that § 5 power is broad and includes the "authority both to remedy and to deter violation of [the] rights guaranteed

9

by the Fourteenth Amendment by prohibiting a somewhat broader swath of conduct, including that which is not prohibited by the Amendment's text," but is necessary to "prevent and deter unconstitutional conduct." Id. In other words, Congress' power under § 5 includes the ability to enact "prophylactic" legislation prohibiting practices that are discriminatory in effect. Id. at 520. After examining the history of disability discrimination in the provision of public services such as education, transportation, health services, and voting, the Supreme Court concluded that Congress acted within its § 5 powers in abrogating state immunity for ADA Title II, at least regarding the protection of certain fundamental rights guaranteed by the Due Process Clause, such as access to the courts. See id. at 528-34. The Supreme Court distinguished its decision in Garrett, which held that Congress did not have the power to abrogate state immunity in ADA Title I cases, because Garrett sought to enforce the rights under the Equal Protection Clause based on a classification subject to only rational-basis review. Id. at 528. In Lane, the Supreme Court declined to consider whether Congress rightfully abrogated Eleventh Amendment immunity from Title II's applications to public benefits such as state-owned hockey rinks. Id. at 531. Although the Ninth Circuit has not ruled on this particular issue, the district courts and other circuit courts have interpreted Lane to mean that courts must engage in a case-by-case analysis of whether an ADA Title II case involves "fundamental rights" to

10

determine whether Congress rightfully abrogated state immunity with respect to it.  See Talevski v. Regents of the Univ. of California, 2013 WL 4102202, at *4 (S.D. Cal.) (holding that participation in recreational programs open to the public did not implicate a fundamental constitutional right); Klingler v. Dir., Dep't of Revenue, State of Mo., 455 F.3d 888, 894 (8th Cir. 2006) (ruling that Missouri's discriminatory parking placard fee did not significantly impair any fundamental rights such as those at issue in Lane).  See also Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 793 (9th Cir. 2004) (O'Scannlain, J., concurring) ("A State may well retain its Eleventh Amendment immunity where a plaintiff premises a Title II claim solely upon an alleged equal protection violation and has not suffered the deprivation of any other constitutional right.").

Not having a direct Title II claim against PAUSD before it, the Court cannot decide at this time whether this case involves a fundamental right.  The scope of Plaintiffs' potential direct Title II claim is especially unclear because, at oral argument, Plaintiffs could not articulate exactly what right they sought to protect.  Plaintiffs oscillated between claiming only a constitutional right to privacy, a right to education, or a combination of both.  The Court therefore cannot make a meaningful determination as to whether such a right is fundamental.

The Court next considers whether there is an exception to Eleventh Amendment immunity regarding a potential Rehabilitation

11

Act claim. Although Congress likely did not have the authority to abrogate state immunity regarding the Rehabilitation Act, see Vinson, 288 F.3d at 1158 n.2, the Ninth Circuit ruled that California waived state immunity under the Rehabilitation Act. Douglas, 271 F.3d at 819. The language of the Rehabilitation Act statutory language manifests "a clear intention to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." Id. By accepting federal funds under the Act, California waived its state immunity regarding the Act and consented to be sued. Id. The Eleventh Amendment therefore will not bar a direct Rehabilitation Act claim by Plaintiffs against PAUSD.

### III. Plaintiffs' ADA and Section 504 claims are insufficiently plead

"To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). To plead a claim under § 504 of the Rehabilitation Act, after which the ADA was modeled, a plaintiff must prove similar elements: (1) that he has a disability; (2) that he is otherwise qualified to receive the benefit in question; (3) that he was denied those benefits solely because of his disability; and

12

(4) that the benefits program receives federal financial assistance. Id.

Under either of these claims, Plaintiffs fail to provide enough facts to make a violation of the statute plausible. See Iqbal, 556 U.S. at 678. In their complaint, Plaintiffs target two alleged wrongs by PAUSD: the unauthorized disclosure of C.C.'s private health information and the attempt to transfer C.C. to another middle school. Plaintiffs then make a bare recitation of the elements of Title II and the Rehabilitation Act. Plaintiffs do not provide any facts or explanation as to how C.C. qualifies as a protected individual under either statute. While Plaintiffs allude to C.C.'s "condition," they do not disclose what condition he has or how it qualifies as a disability under either statute.[2] The potentially sensitive nature of the information does not excuse Plaintiffs' duty to apprise the Court of the facts underlying their case. If Plaintiffs do not wish to disclose such information in a publicly-filed complaint, they may file a motion to seal that information. See Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006); Civ. L.R. 79-5. To move to seal sensitive information successfully, Plaintiffs must make a particularized showing that compelling reasons exist for

---

[2] To be disabled under the ADA, a plaintiff must show: (A) a physical or mental impairment that substantially limits one or more of his or her major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. Bragdon v. Abbott, 524 U.S. 624, 630 (1998). The standard for disability under the Rehabilitation Act is almost identical. See id. at 631.

13

sealing the information, for example, that the information would become a "vehicle for improper purposes, such as . . . to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets"). Kamakana, 447 F.3d at 1179. By definition, information that is readily available cannot be sealable. See id. at 1180 (motions to seal are aimed to "maintain the secrecy" of the documents at issue); Apple Inc. v. Psystar Corp., 2012 WL 10852, at *2 (N.D. Cal.) ("There is no compelling reason to justify sealing the documents if the information is already available to the public.").

Additionally, Plaintiffs fail to spell out what benefits or programs C.C. was denied due to his disability. At oral argument, Plaintiffs at one point suggested the theory of the case was that C.C. was denied only the "benefit" of having his genetic condition kept private, then later said C.C. was also denied the right to go to school. Without passing judgment as to the adequacy of these theories, at the very least Plaintiffs must state on the face of their complaint the theory upon which they intend to rely.

To recover monetary damages under Title II or the Rehabilitation Act, a plaintiff must further prove either intentional discrimination or at least deliberate indifference. Duvall, 260 F.3d at 1138-1141 (finding evidence that county officials acted with deliberate indifference in denying the hearing-impaired plaintiff the use of a videotext display at his trial). Plaintiffs cite their complaint, which states that Mr. Barnes informed them that, based on the demands of Mr. and Mrs. X after learning of C.C.'s condition, "PAUSD intended to prohibit C.C. from further attending the middle school." 1AC ¶ 13.

14

Although the paragraph identified does use the word "intended," it does not allege that PAUSD tried to transfer C.C. with the intent to discriminate against him due to his disability, or with deliberate indifference to such discrimination.  Further, there is no intent to discriminate based on disability alleged for the disclosure of C.C.'s medical information.

IV.   The entire complaint is "covered" by FERPA

PAUSD additionally challenges that the confidentiality of student records is protected under the Federal Education Rights and Privacy Act (FERPA), 12 U.S.C. § 1232(g), not the ADA and § 504.  PAUSD argues that Plaintiffs cannot assert their claims because the facts fit a FERPA claim rather than the claims Plaintiffs have chosen to assert.  But Plaintiffs are the masters of their own complaint and are free to assert whichever claims they choose and eschew others.  See Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1371 (9th Cir. 1987).  The Court evaluates Plaintiffs' claims as plead, not as they have been recast by PAUSD.

The Eastern District of Michigan case cited by PAUSD, O'Neal v. Remus, 2010 U.S. Dist. LEXIS 35566 (E.D. Mich.), does not provide anything to the contrary.  In analyzing the plaintiff's ADA and Rehabilitation Act claims, the district court noted that the plaintiff had not "identified any public service, program, or activity provided by the Detroit Board of Education that he claims to have been denied" and accordingly dismissed those claims.  Id. at *13-14.  The court did not summarily conclude that circumstances giving rise to a FERPA claim could not also give rise to an ADA or Rehabilitation Act claim, but instead found the

15

plaintiff's allegations insufficient under the ADA and Rehabilitation Act themselves.  Id.  To be sure, Plaintiffs must identify a benefit or program to which C.C. was denied access.  Disclosure of information alone is unlikely to satisfy this requirement, but the correct analysis is under the claims asserted, not FERPA.

PAUSD attempts to make a similar, but slightly different argument that, because its conduct was expressly permitted under FERPA, Plaintiffs cannot sue based on this conduct.  Under FERPA, student information may be disclosed, without consent, to protect the health or safety of students.  See 34 C.F.R. § 99.31(a)(10).  Because neither party has provided the nature of C.C.'s condition and the reasons for the school's disclosure, the Court cannot at this time determine if PAUSD's defense is legitimate.  For example, it is not clear that PAUSD disclosed the information for the purpose of protecting C.C. or another student or both.  Additionally, PAUSD cites no law stating that, so long as it is compliant with FERPA, it cannot be liable under the ADA, § 504, or constitutional law claims for the challenged conduct.

V.   Plaintiffs James Chadam, Jennifer Chadam, and A.C. cannot assert individual claims under the ADA and Section 504

PAUSD argues that only C.C. was allegedly denied benefits due to disability, and so the other Plaintiffs may not recover because they personally were not subject to a violation of any of the rights at issue.  While parents may assert ADA and § 504 claims on behalf of their child, they may not assert claims based on their own injury arising from violations of their child's rights under

16

those laws.  See Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir. 2007).  C.C.'s parents are only proper plaintiffs "insofar as [they are] asserting and enforcing the rights of [their] son and incurring expenses for his benefit."  Id.  This does not include their own "severe past, present and future emotional distress," "humiliation," "embarrassment," "disruption in family life," or other damages if they themselves were not denied benefits due to disability.  See D.K. ex rel. G.M. v. Solano Cnty. Office of Educ., 667 F. Supp. 2d 1184, 1193-94 (E.D. Cal. 2009).  Plaintiffs James Chadam, Jennifer Chadam, and A.C. plead no additional facts or legal authority that would enable them to recover.  Accordingly, their individual claims for relief must fail.

CONCLUSION

The Court GRANTS PAUSD's motion to dismiss.  As ordered at the January 16, 2014 hearing, Plaintiffs may file an amended complaint no later than February 16, 2014.  In the amended complaint, Plaintiffs should provide the status of the state court action involving the same events and explain why this action is not barred by the state court action due to either res judicata or release of claims.

By the same date, Plaintiffs must submit a petition for appointment of a person without a conflict of interest to serve as a guardian ad litem for C.C.

PAUSD shall answer or move to dismiss within twenty-one days of the filing of the amended complaint.  If PAUSD moves to

17

dismiss, Plaintiffs' opposition will be due fourteen days later. PAUSD's reply will be due seven days later. The motion will be decided on the papers. As noted at the motion hearing, a case management conference will be held, unless vacated, on April 16, 2014 at 2:00 PM. A joint case management conference statement will be due one week in advance.

IT IS SO ORDERED.

Dated: 1/29/2014

CLAUDIA WILKEN
United States District Judge

18