IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES CHADAM and JENNIFER CHADAM,
individually and on behalf of
their minor children A.C. and
C.C.,

          Plaintiffs,

    v.

PALO ALTO UNIFIED SCHOOL
DISTRICT, a governmental entity
created and existing under the
laws of the State of California,

         Defendant.
_____/

No. C 13-4129 CW

ORDER GRANTING
DEFENDANT'S MOTION
TO DISMISS SECOND
AMENDED COMPLAINT
(Docket No. 43)

Defendant Palo Alto Unified School District (PAUSD) moves to dismiss Plaintiffs' second amended complaint (2AC).  Plaintiffs James Chadam and Jennifer Chadam, individually and on behalf of their minor children A.C. and C.C., oppose the motion.  Jennifer Chadam was appointed guardian ad litem.  Plaintiffs have filed an opposition, and PAUSD has filed a reply.  Having considered the papers, the Court GRANTS PAUSD's motion to dismiss.

FACTUAL BACKGROUND

The following facts are alleged in the complaint and taken as true for the purposes of this motion.

James and Jennifer Chadam (the Chadams or Plaintiffs) reside in Palo Alto, California with A.C. and C.C., their minor children. 2AC ¶ 1.  As a newborn, C.C. underwent genetic screening following cardiac surgery.  2AC ¶ 5.  The screening indicated that C.C. had genetic markers for cystic fibrosis (CF), but further testing revealed he did not have CF.  2AC ¶ 5.

United States District Court
For the Northern District of California

On July 22, 2012, Jennifer Chadam enrolled her sons A.C. and C.C. in a middle school owned and operated by PAUSD.  Id. ¶ 11. On August 1, 2012, Jennifer Chadam completed and returned several forms for enrollment, including a "Report of Health Examination for School Entry" regarding C.C.  Id. ¶ 12.  This form included "private, personal and privileged medical information."  Id. PAUSD assigned both children to attend Jordan Middle School.  Id. ¶ 13.  Between August 2, 2012, and August 16, 2012, the Chadams provided additional medical information regarding C.C.  Id. ¶ 14. On August 16, 2012, A.C. and C.C. began attending their assigned middle school.  Id. ¶ 15.

On August 22, one of C.C.'s teachers contacted the Chadams regarding C.C.'s medical condition.  Id. ¶ 16.  On or about September 11, 2012, during a parent-teacher conference, one of C.C.'s teachers disclosed C.C.'s private medical information to parents of another student attending the middle school (Mr. and Mrs. X).  Id. ¶ 17.  Specifically, the teacher told Mr. and Mrs. X that C.C. had CF.  Id. ¶ 17.  The teacher did so with no prior permission or notice from the Chadams.  Id.

On September 11, 2012, PAUSD arranged for the Chadams to attend a meeting with Gregory Barnes, the middle school's principal, along with Linda Lenoir, PAUSD Nurse, and Grant Althouse, the Vice Principal and Administrator of sixth grade. Id. ¶ 18.  At the meeting, the Chadams were told that the children of Mr. and Mrs. X had active CF and that Mr. and Mrs. X had "discovered C.C.'s condition."  Id. ¶ 19.  At that time, the Chadams informed those in attendance at the meeting that C.C. did not, in fact, have cystic fibrosis.  Id. ¶ 20.

United States District Court
For the Northern District of California

On or about September 13, 2012, Dr. Carlos Milla sent a letter to PAUSD regarding the medical issues raised by C.C.'s presence at Jordan Middle School.  Id. ¶ 23.  Dr. Milla's letter recommended that C.C. be removed from Jordan Middle School for the safety of Mr. and Mrs. X's children.  Id.  Details about Dr. Milla's identity and connection to the case are not disclosed.

On September 14, Jennifer Chadam informed Mr. Barnes that she did not want C.C. to be transferred out of Jordan Middle School. Id. ¶ 25.  Mr. Barnes informed Jennifer Chadam that Mr. and Mrs. X had decided to remove their children from the school, so there was no need "to make any changes" at that time.  Id.

On September 16, 2012, Mrs. X sent a letter to Ms. Lenoir requesting that C.C. be removed from Jordan Middle School so that her children could return to school.  Id. ¶ 28.  On September 17, 2012, Dr. Milla sent another letter, this time recommending that children with CF must not be in the same school together.  Id. ¶ 29.

On September 17, 2012, the Chadams received a call from Mr. Barnes informing them that, based on Mr. and Mrs. X's demands, and based on C.C.'s private medical information, PAUSD intended to prohibit C.C. from attending Jordan Middle School and to transfer him to another PAUSD middle school.  Id. ¶ 30.  That same day, the Chadams emailed Assistant Superintendent Charles Young, demanding that he provide the documentation upon which the district relied to transfer C.C. out of Jordan Middle School.  Id. ¶ 31.  The next day, the Chadams made the same demand to Mr. Young, this time in person.  Id.

On September 20, the Chadams provided a letter from Dr. John Morton, explaining that C.C. did not have any signs of CF.  Id. ¶ 32.  In this letter, Dr. Morton stated that he did not think that "this boy is any risk whatsoever to other children with [cystic fibrosis] even if they were using the same classroom." Id.  Also on September 20, the Chadams met with Mr. Young and Ms. Lenoir.  Id. ¶ 33.  At this meeting, the Chadams reiterated that C.C. did not have, nor had he ever had, CF.  Id.  The Chadams allege that Mr. Young informed them that the decision to remove C.C. from Jordan Middle School was based on a letter from a Stanford doctor.  Id.

On September 24, 2012, Jennifer Chadam offered to provide Mr. Young more medical evidence that C.C. was not a risk to any other child.  Id. ¶ 34.  On September 28, Mr. Young informed the Chadams, by telephone and in writing, that C.C. was going to be transferred out of Jordan Middle School.  Id. ¶¶ 35-36.

On October 10, C.C. was removed from his classroom at Jordan Middle School and told it was his last day at the school.  Id. ¶ 37.  C.C. did not attend school for approximately two weeks.  On October 12, 2012, the Chadams brought suit in a California state court seeking to enjoin PAUSD from transferring C.C. to another middle school.  Id. ¶ 38.  Prior to a hearing on the merits of the case, the parties "settled the matter" and C.C. was permitted to stay at Jordan Middle School.  Id.

On September 6, 2013, the Chadams brought this suit in federal court, alleging (1) violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., through 42 U.S.C. § 1983; (2) violation of the Rehabilitation Act of 1972 (RA

or § 504), 29 U.S.C. § 794 et seq., through 42 U.S.C. § 1983; and
(3) violation of the federal right to privacy conferred by the
First Amendment.  PAUSD filed a motion to dismiss the complaint,
which this Court granted with leave to amend.  Chadam v. Palo Alto
Unified Sch. Dist., Docket No. 32, Order Granting Mot. Dismiss
First Am. Compl., Jan. 29, 2014.

The Chadams' second amended complaint alleges four causes of
action: (1) violation of the ADA; (2) violation of § 504;
(3) violation of the First Amendment; and (4) negligence.

LEGAL STANDARDS

A complaint must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a
claim to relief that is plausible on its face."  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible
"when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Id.

In considering whether the complaint is sufficient to state a
claim, the court will take all material allegations as true and
construe them in the light most favorable to the plaintiff.
Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061
(9th Cir. 2008).  The court's review is limited to the face of the
complaint, materials incorporated into the complaint by reference,
and facts of which the court may take judicial notice.  Id. at
1061.  However, the court need not accept legal conclusions,
including "threadbare recitals of the elements of a cause of

United States District Court
For the Northern District of California

action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).  However, where a court has previously granted a plaintiff an opportunity to amend its complaint after a motion to dismiss, and the amended complaint still fails to state claims with the required particularity, the court may grant a motion to dismiss without granting the plaintiff leave to amend. Arroyo v. Chattem, Inc., 926 F. Supp. 2d 1070, 1081 (N.D. Cal. 2012).

DISCUSSION

I. Status of State Court Litigation

In its previous order, this Court required that, in any amended complaint, the Chadams were to "provide the status of the state court action involving the same events and explain why this action is not barred by the state court action due to either res judicata or release of claims." Order Grant. Mot. Dismiss 17:20-23.  PAUSD argues that because the dispute regarding C.C.'s continued attendance at Jordan Middle School was settled, the Chadams' current claims are barred by res judicata.

United States District Court
For the Northern District of California

The doctrine of res judicata, or claim preclusion, prohibits the re-litigation of any claims that were raised or could have been raised in a prior action.  <u>Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064, 1077 (9th Cir. 2003). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." <u>Marin v. HEW, Health Care Fin. Agency</u>, 769 F.2d 590, 594 (9th Cir. 1985) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)).  Res judicata may be raised on a motion to dismiss when doing so does not raise any disputed issues of fact.  <u>Scott v. Kuhlmann</u>, 746 F.2d 1377, 1378 (9th Cir. 1984).  Three elements must be present in order for res judicata to apply: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or their privies.  <u>Allen</u>, 449 U.S. at 94.

The Chadams allege that, prior to a state court hearing on the merits, the "parties settled the matter and C.C. has continued to attend Jordan Middle School." 2AC ¶ 38.  The Chadams' counsel has filed a Request For Judicial Notice (RFJN) which states that on March 27, 2014, he filed a request to have the state court action dismissed without prejudice.  RFJN, Ex. A.  There is no indication that the Superior Court has granted the request.

In any case, the Chadams allege that the state court suit has not been tried on its merits, and PAUSD does not dispute that allegation.  PAUSD has failed to show that there has been a final judgment in the state court suit, or a dismissal with prejudice. As a result, PAUSD has not shown that res judicata applies.  PAUSD does not move to dismiss because it obtained a release in the

**United States District Court**
For the Northern District of California

settlement of the state court case.  Accordingly, the Court declines to dismiss the complaint on the basis of res judicata or a release of claims.  However, the case must be dismissed for other reasons.

II.  First Cause of Action: Violation of Title II of the Americans with Disabilities Act

The Chadams allege that PAUSD violated Title II of the ADA by depriving C.C. of certain alleged rights on the basis of a perceived disability.  PAUSD argues that this cause of action fails for several reasons.  As a threshold matter, it argues that the Chadams' claim is barred by Eleventh Amendment immunity. Second, it argues that C.C. is not disabled or perceived as disabled under the ADA, nor was he denied the benefit of a public program or deprived of any other rights.  Third, it argues that its alleged conduct is expressly permitted by law, and hence "non-actionable."  Fourth, it argues that because the Chadams do not allege intent to discriminate on the basis of a disability or perceived disability, they are not entitled to seek monetary damages, which is all they seek in the complaint.  Lastly, it argues that Plaintiffs James Chadam, Jennifer Chadam and A.C. do not have standing to bring individual claims.

A. Eleventh Amendment Immunity

PAUSD argues that it is shielded from ADA Title II liability by the Eleventh Amendment.  In the January 29, 2014 Order Granting Defendant's Motion to Dismiss the First Amended Complaint, this

Court suggested that in order to bring a proper Title II claim

that is not barred by PAUSD's Eleventh Amendment immunity, the

Chadams would have to allege that PAUSD's Title II violation

deprived C.C. of a fundamental right.

> After examining the history of disability discrimination in
> the provision of public services such as education,
> transportation, health services and voting, the Supreme Court
> concluded that Congress acted within its [Fourteenth
> Amendment section five] powers in abrogating state immunity
> for ADA Title II, at least regarding the protection of
> certain fundamental rights guaranteed by the Due Process
> Clause, such as access to the courts. . . .  Although the
> Ninth Circuit has not ruled on this particular issue, the
> district courts and other circuit courts have interpreted
> Tennessee v. Lane, 541 U.S. 509 (2004), to mean that courts
> must engage in a case-by-case analysis of whether an ADA
> Title II case involves "fundamental rights" to determine
> whether Congress rightfully abrogated state immunity with
> respect to it.

Order Grant. Mot. Dismiss 10:7-11:2.

While the Chadams' privacy claim arguably implicates a

fundamental right, the Chadams have not alleged any authority for

the proposition that school choice or freedom from being

stigmatized is a fundamental right.  However, because this cause

of action fails for other reasons as described below, the Court

need not decide whether PAUSD would enjoy Eleventh Amendment

immunity for their ADA Title II claims in this case.

     B.  Sufficiency of ADA Cause of Action

     Title II applies to all "public entities," including schools.

42 U.S.C. § 12131; see also Lane, 541 U.S. at 525.  "To prove that

a public program or service violated Title II of the ADA, a

plaintiff must show: (1) he is a 'qualified individual with a

disability'; (2) he was either excluded from participation in or

denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (citation omitted); see also 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.")

PAUSD argues that, even if the Chadams' Title II claim did not fail due to Eleventh Amendment immunity, it fails because they do not state facts sufficient to support a cause of action for a violation of the ADA. Specifically, it argues that C.C. is neither disabled nor perceived as having a disability, nor was he denied the benefit of a public program. It also argues that the Chadams have failed to allege "that defendant took improper action by reason of the plaintiff's disability." Docket No. 43 at 18. Lastly, it argues that the Chadams have failed to allege the discriminatory intent required to state a claim for monetary damages.

1. "Regarded as" disabled

To be considered disabled under Title II, a plaintiff must show: (1) a physical or mental impairment[1] that substantially limits one or more of his or her major life activities; (2) a record of such an impairment; or (3) that he or she is regarded as having such an impairment.  Bragdon v. Abbott, 524 U.S. 624, 630 (1998).  For claims arising after the ADA Amendments Act of 2009, the "regarded as" prong provides that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102.  "The phrase 'is regarded as having an impairment' means -- (1) Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a public entity as constituting such a limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments defined

[1] "The phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism."  28 C.F.R. § 35.104.

United States District Court
For the Northern District of California

in paragraph (1) of this definition but is treated by a public

entity as having such an impairment."[2]  Id.

While the Ninth Circuit has not specifically designated

cystic fibrosis as a disability under the ADA, other district

courts have.  See, e.g., Save Our Summers v. Wash. State Dep't of

Ecology, 132 F. Supp. 2d 896, 907 (E.D. Wash. 1999).[3]

However, the Chadams allege that PAUSD knew C.C. did not

actually have cystic fibrosis but only had a genetic marker for

the disease.  The question is whether PAUSD treated C.C. as if he

had a physical impairment.

The Chadams allege that, as a result of PAUSD's mistaken

belief about the danger C.C. posed to other students, PAUSD

disclosed his personal information to another family, attempted to

---

[2] This definition represents a change from the previous
standard.  Under that standard, the Ninth Circuit "required that a
plaintiff alleging a 'regarded as' claim [under Title I, with
regards to employment] 'provide evidence of the employer's
misperception, or subjective belief that the plaintiff is
substantially impaired.'  A plaintiff who does not have direct
evidence of the employer's subjective belief that the plaintiff is
substantially limited in a major life activity must provide
evidence that the impairment imputed to the plaintiff is,
objectively, a substantially limiting impairment."  Scott v.
Napolitano, 717 F. Supp. 2d 1071, 1086-87 (S.D. Cal. 2010)
(citations omitted).

[3] Cystic fibrosis is "a hereditary disease . . . that appears
usually in early childhood, is inherited as an autosomal recessive
monogenic trait, involves functional disorder of the exocrine
glands, and is marked especially by faulty digestion due to a
deficiency of pancreatic enzymes, by difficulty in breathing due
to mucus accumulation in airways, and by excessive loss of salt in
the sweat."  Cystic Fibrosis, MedlinePlus: Merriam-Webster,
http://www.merriam-webster.com/medlineplus/cystic%20fibrosis (last
visited Oct. 22, 2014).

transfer C.C. out of his assigned middle school and subjected him to ridicule and humiliation.  The Chadams have alleged sufficient facts to support the inference that PAUSD acted on the basis of a mistaken belief about C.C.'s status as a genetic carrier for CF and, hence, regarded him as disabled.

2. Service, program or activity

In determining what constitutes a service, program or activity, the Ninth Circuit "construe[s] 'the ADA's broad language as bringing within its scope anything a public entity does.'" Cal. Council of the Blind v. Cnty. of Alameda, 985 F. Supp. 2d 1229, 1235 (N.D. Cal. 2013) (citation omitted).  "The legislative history of the ADA . . . supports construing the language generously, providing that Title II . . . 'simply extends the anti-discrimination prohibition embodied in section 504 to all actions of state and local governments.'"  Barden v. City of Sacramento, 292 F.3d 1073, 1077 (9th Cir. 2002).

The Chadams allege that, because it regarded C.C. as a person with a disability, PAUSD deprived him of "fundamental and substantial rights under the law" including the right to attend the school closest to his home, to have his medical information remain confidential, and not to be subjected to ridicule and harassment.  As stated above, while his privacy claim arguably implicates a fundamental right, the Chadams do not provide authority for the proposition that any of the rights or benefits denied to C.C., including privacy, are either "fundamental" or

13

"substantial."  They may, however, state facts sufficient to support the inference that attendance at the school closest to one's home, the confidentiality of medical information, or freedom from ridicule and embarrassment are services, programs or activities encompassed under the definition stated in <u>Cal. Council of the Blind</u> and <u>Barton</u>.  Be that as it may, because this claim must be dismissed on other grounds, the Court need not decide if C.C. was deprived of services, programs and activities within the meaning of the ADA.

> ### 3. Exclusion from or denial of a service, program or activity

PAUSD argues that none of the rights deprivations the Chadams cite in their complaint rises to the level of a denial of a service, program or activity because its conduct is expressly permitted by statute.

Title II does

> not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others. . . .  In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 35.139.  Further, a public entity "may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities.  However, the public entity

14

must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." Id. at § 35.130.

The Ninth Circuit has held that "it is clear that ultimately the entity asserting a 'direct threat' as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others." Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1066 (9th Cir. 2007).  On the other hand, one-time exclusion based on a reasonable judgment of the risks involved may be acceptable. Id. (holding that a ferry operator's one-time exclusion of a service animal from a lounge where another passenger purportedly had an animal dander allergy was a reasonable judgment under 28 C.F.R. § 36.208).  However, an ongoing policy of exclusion may well violate the ADA even when a one-time exclusion does not.  Id.

The Chadams have not alleged any facts to support the inference that PAUSD did not act in an effort to preserve the safe operation of the school.  Nor have they alleged any facts to support the inference that PAUSD's brief exclusion of C.C. from the school closest to his home, in light of the risk involved, was not reasonable given the information PAUSD had.  In fact, they allege that PAUSD told them it was basing its decision on medical evidence provided both by Dr. Milla and a "top Stanford doctor." They state that PAUSD made decisions on the basis of its belief that C.C.'s presence in the school was a serious threat to

other students.  Furthermore, C.C. was allowed, within two weeks, to return to the school closest to his home, indicating that PAUSD had changed its policy with regard to C.C.

In short, the Chadams admit that PAUSD believed the risk to other children was real and based on medical evidence. Accordingly, the Court GRANTS PAUSD's motion to dismiss the Chadams' Title II cause of action.

### 4. Compliance with the Family Educational Rights and Privacy Act (FERPA) and the California Education Code

PAUSD argues that, even if the Chadams' Title II cause of action did not fail for the reasons stated above, its compliance with both the California Education Code and the Family Educational Rights and Privacy Act (FERPA) shields it from ADA liability. PAUSD argues that California Education Code section 49451 obliges it to "exclude students for which the school has good reason to believe have an infectious disease."  Docket No. 43 at 16-17.  If that is true, then C.C. likely did not have a right to attend a school with another child with cystic fibrosis during the time period PAUSD needed to ascertain whether or not C.C. posed a risk to another child.  However, because the Court finds that Title II itself provides for a defense based on the safe operations of a public entity's programs, it need not decide whether adherence to the California Education Code is a defense to an ADA Title II claim.

PAUSD also argues that, under FERPA and the California Education Code, it is allowed to disclose student information without consent "to protect the health/safety of students." Docket No. 43 at 17.  It argues that when FERPA and the California Education Code expressly allow for the "disclosure of information to protect the health and safety of students," the information disclosed is "rendered not confidential."  Docket No. 49 at 6.

Because this cause of action must be dismissed for other reasons, the Court need not decide whether compliance with FERPA and the Education Code is a defense to the Chadams' Title II claim.

C. Monetary Damages

Lastly, PAUSD argues that, even if the Chadams' Title II cause of action did not fail for the reasons discussed above, their claims, which are for money damages, would fail because they have not alleged the requisite intent.

In Ferguson v. City of Phoenix, 157 F.3d 668 (9th Cir. 1998), the Ninth Circuit considered the circumstances under which compensatory damages are available for violations of Title II and § 504.  "By statute, the remedies for violations of the ADA and the Rehabilitation Act are co-extensive with each other, . . . and are linked to Title VI of the Civil Rights Act of 1964. . . . These statutes require that ADA and Rehabilitation Act remedies be construed the same as remedies under Title VI."  Id. at 673 (citations omitted).  Under Title VI, "compensatory damages are

United States District Court
For the Northern District of California

not available . . . absent a showing of discriminatory intent."
Id. at 674.

While the Chadams accuse PAUSD of conduct that was "intended to cause harm and injury to plaintiffs," they do not allege any facts to support that accusation.  Even if this claim were not dismissed for other reasons, it would not support a request for monetary damages.  The Chadams admit that PAUSD's actions resulted from its belief that student safety was at risk.  Money damages are the only relief the Chadams seek; they did not seek injunctive relief, which would be moot in any event, because C.C. is currently attending the school closest to his home.

> D. Plaintiffs James Chadam, Jennifer Chadam, and A.C. cannot
>    assert individual claims under the ADA and Section 504

In its previous order, the Court stated:

> While parents may assert ADA and § 504 claims on behalf of
> their child, they may not assert claims based on their own
> injury arising from violations of their child's rights under
> those laws.  C.C.'s parents are only proper plaintiffs
> "insofar as [they are] asserting and enforcing the rights of
> [their] son and incurring expenses for his benefit."  This
> does not include their own "severe past, present and future
> emotional distress," "humiliation," "embarrassment,"
> "disruption in family life," or other damages if they
> themselves were not denied benefits due to disability.
> Plaintiffs James Chadam, Jennifer Chadam, and A.C. plead no
> additional facts or legal authority that would enable them to
> recover.  Accordingly, their individual claims for relief
> must fail.

Order Granting Mot. Dismiss 16:26-17:15. (citations omitted).

In their 2AC, the Chadams and A.C. have not alleged any additional facts to support their individual claims.  Accordingly, these individual claims must fail.

E. ADA Title II Cause of Action: Conclusion

The Chadams have not alleged facts sufficient to support their claim for a violation of Title II of the ADA.  Specifically, they have not alleged facts sufficient to support the accusation that PAUSD excluded C.C. from, or denied him access to, any service, program or activity because it regarded him as disabled, rather than because it believed, based on medical evidence, that his condition imposed a health risk to other students.  Nor do they allege facts sufficient to support the accusation that PAUSD acted with the intent to discriminate or with the deliberate indifference that would entitle them to monetary damages.  Accordingly, the Court GRANTS PAUSD's motion to dismiss this cause of action.  Because the Chadams have already been granted an opportunity to amend this claim, it is now dismissed with prejudice.

II.  Second Cause of Action: Violation of the Rehabilitation Act of 1973

The Chadams' cause of action for a violation of the Rehabilitation Act (§ 504) is based on the same allegations as their ADA Title II cause of action.  PAUSD raises the same arguments in its motion to dismiss this cause of action.

A. Eleventh Amendment Immunity

As it argued with regard to the ADA cause of action, PAUSD argues that, pursuant to the Eleventh Amendment, it is immune from

United States District Court
For the Northern District of California

causes of actions brought under § 504. As explained in the

Court's previous order, however,

> The Ninth Circuit ruled that California waived state immunity
> under the Rehabilitation Act. The . . . Rehabilitation Act's
> statutory language manifests "a clear intention to condition
> participation in the programs funded under the Act on a
> State's consent to waive its constitutional immunity." By
> accepting federal funds under the Act, California waived its
> state immunity regarding the Act and consented to be sued.
> The Eleventh Amendment therefore will not bar a direct
> Rehabilitation Act claim by Plaintiffs against PAUSD.

Order Granting Mot. Dismiss 12:3-14 (citations omitted).

Accordingly, the Court declines to dismiss this cause of action on

the basis of Eleventh Amendment immunity.

B. Sufficiency of § 504 Cause of Action

PAUSD argues that even if the Chadams' § 504 claim does not

fail due to Eleventh Amendment immunity, it fails because they do

not state facts sufficient to support a cause of action for a

violation of § 504. PAUSD relies on the same arguments presented

in opposition to the Chadams' Title II claim.

The only difference between an ADA Title II cause of action

and a cause of action pursuant to § 504 is that a plaintiff must

allege that the benefits program receives federal financial

assistance. Duvall, 260 F.3d at 1135. That element is not

disputed by the parties. Nonetheless, the Chadams' cause of

action under § 504 fails for the same reasons their Title II cause

of action fails. Accordingly, the Court GRANTS PAUSD's motion to

dismiss this cause of action. Because the Chadams have already

been granted an opportunity to amend this claim, it is now

dismissed with prejudice.

III. Third Cause of Action: Violation of the Federal
     Constitutional Right to Privacy

     The Chadams allege that, through the unauthorized disclosure

of C.C.'s medical information, PAUSD violated "C.C.'s

constitutional right to privacy conferred upon him by the First

Amendment of the Constitution of the United States."  2AC ¶ 50.

     "Technically, the First Amendment only restricts actions by

the federal government.  First Amendment rights against state

actors derive from the Fourteenth Amendment and must be brought

under 42 U.S.C. § 1983."  Qualls v. Regents, Univ. of Cal., 2013

WL 3341039, at *8 (E.D. Cal.).

     In its previous order, the Court stated, "As a California

school district, PAUSD is a state agency equivalent to the state

itself.  PAUSD therefore is not a 'person' within the meaning of

§ 1983, and so Plaintiffs' [claim for a First Amendment violation

of privacy] is barred."  Order Granting Mot. Dismiss 7:23-26.  The

Court went on to note that the Chadams could bring a cause of

action against individual state officials in their personal

capacity.  Id., fn.1.  The Chadams have not done so in their 2AC.

     Accordingly, the Court GRANTS PAUSD's motion to dismiss this

cause of action.  Because the Chadams have already been granted an

opportunity to amend this claim, it is now dismissed with

prejudice.

IV.  Fourth Cause of Action: Negligence

     The Chadams allege that PAUSD "owed [them] a duty of care

21

. . . not to allow the unlawful and improper disclosure of personal, confidential, private medical information." 2AC ¶ 53. They allege that PAUSD breached its duty of care by "allowing one of its teachers to disclose" C.C.'s medical information to Mr. and Mrs. X.  Id.  They further allege that PAUSD's conduct was "willful, deliberate and intended to cause harm and injury."  Id. PAUSD argues that the Chadams' negligence claim fails to comply with the California Tort Claims Act and to include a statutory basis.

> A. California Tort Claims Act, California Government Code section 810 et seq.

"Under the Tort Claims Act, a plaintiff may not maintain an action for money or damages against a public entity unless first a written claim has been presented to the public entity and rejected in whole or in part.  Failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.  Before a cause of action may be stated, a plaintiff must allege either compliance with this procedure or circumstances excusing compliance." Connelly v. Cnty. of Fresno, 146 Cal. App. 4th 29, 36-37 (2006) (citations omitted).  "[I]n considering whether a claim substantially complies with the Government Tort Claims Act, the claim should be viewed in its entirety and a determination made as to whether the claim is susceptible to an interpretation that reasonably enables the public entity to make an adequate investigation and settle the claim."  Id. at 40.  "Timely claim presentation is not merely a procedural requirement, but rather, a condition precedent to a plaintiff's maintaining an action against a defendant, and thus,

an element of the plaintiff's cause of action." Belinda K. v.
Cnty. of Alameda, 2011 WL 2690356, at *11 (N.D. Cal.). "Failure
to allege facts in a complaint demonstrating or excusing
compliance with the Tort Claims Act subjects the complaint to a
motion to dismiss for failure to state a cause of action." Id.

Plaintiffs allege that they substantially complied with the
TCA through the "pleadings, allegations, documents, declarations
and exhibits filed in the now dismissed state court injunctive
relief action." Docket No. 47 at 18. However, the TCA requires a
"written claim [to be] presented to the public entity and rejected
in whole or in part." The Chadams do not allege that they
submitted a written claim for money damages to PAUSD, nor do they
allege that the claim was rejected, either in whole or in part.
They have not complied with the Tort Claims Act because they did
not give to PAUSD, prior to filing this lawsuit, written notice of
their allegations, causes of action, and claim for damages.
Without such notice, they are barred from bringing this state law
cause of action against PAUSD.

Accordingly, the Court GRANTS PAUSD's motion to dismiss this
cause of action for failure to comply with the Tort Claims Act.
The dismissal is without prejudice to Plaintiffs re-filing the
claim in state court if they can remedy this deficiency. Because
all federal claims are dismissed, this Court will not retain
supplemental jurisdiction over the state claim.

B. Failure to Allege Statutory Basis for Negligence

Notwithstanding the Tort Claims Act issue, PAUSD argues that
the Chadams' negligence claim also fails because they do not state
a statutory basis for the claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

California Government Code section 815.2 provides:

> (a) A public entity is liable for injury proximately caused
> by an act or omission of an employee of the public entity
> within the scope of his employment if the act or omission
> would, apart from this section, have given rise to a cause of
> action against that employee or his personal representative.
> (b) Except as otherwise provided by statute, a public entity
> is not liable for an injury resulting from an act or omission
> of an employee of the public entity where the employee is
> immune from liability.

Furthermore, "[e]xcept as otherwise provided by statute, a public
employee is not liable for an injury resulting from his act or
omission where the act or omission was the result of the exercise
of the discretion vested in him, whether or not such discretion be
abused."  Cal. Gov't Code § 820.2.  "Nevertheless, [t]he fact that
a [public] employee normally engages in discretionary activity is
irrelevant if, in a given case, the employee did not [actually]
render a considered decision."  Walsh v. Tehachapi Unified Sch.
Dist., 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011) (citations
omitted).

Therefore, to bring an action for negligence against PAUSD,
the Chadams would need to allege that the teacher who disclosed
C.C.'s medical information without consent is also liable
personally.  If they cannot do so, then they must allege a
statutory exception by which PAUSD can be found liable for actions
for which the employee is immune.  The Chadams can allege that the
teacher is personally liable only by claiming that the teacher's
conduct was not the result of the discretion vested in his or her
authority.

The Chadams have not made any allegations to support any of
these theories upon which a negligence claim against PAUSD could

rest.  Accordingly, the Court GRANTS PAUSD's motion to dismiss the claim for this reason as well.  As discussed above, this claim is dismissed without prejudice to filing in state court if its deficiencies can be remedied.

CONCLUSION

For the reasons set forth above, the Court GRANTS PAUSD's motion to dismiss (Docket No. 43).  The Chadams' federal claims are dismissed with prejudice; their state claims are dismissed without prejudice to re-filing in state court.

IT IS SO ORDERED.

Dated:  November 4, 2014

_____
CLAUDIA WILKEN
United States District Judge